GLOVER, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST.
PAUL RY. CO. ET AL., APPELLANTS.

(No. 3,800.)

(Submitted January 28, 1918.   Decided February 26, 1918.)

[171 Pac. 278.]

*Personal Injuries—Railroads—Master and Servant—Negligence
—Rules—Licensees—Guests—Res Ipsa Loquitur.*

Personal Injuries—What Plaintiff must Show.
  1.  One who seeks to recover for actionable negligence must show that
  the defendant was under a legal duty to protect him from the injury;
  that the defendant failed to perform that duty; and that the injury
  was proximately caused by the defendant's delinquency.

Same—Railroads—Master and Servant—Plaintiff Off Shift not Employee.
  2.  A railway telegraph operator, off shift, going neither to nor com-
  ing from work when riding on a gasoline speeder at the invitation of
  defendant company's roadmaster on his way to procure food supplies,
  choosing this mode of transportation in order to avoid paying the
  regular fare, was not then an employee of the company.

  [As to distinction between licensee and invitee, see note in **Ann.**
  Cas. 1913C, 570.]

Same—Rules of Master—Customary Disregard—Knowledge.
  3.  If plaintiff had no knowledge of a rule of the railway company
  forbidding employees to ride on gasoline speeders, or the rule was
  more honored in its breach than its observance, its existence could not
  affect his right to recover.

Same—Licensees—Duty Owing to.
  4.  Since plaintiff was injured while riding on the roadmaster's gaso-
  line speeder, on private business, and, aside from the roadmaster's
  invitation, had no warrant for so riding other than acquiescence im-
  plied from custom, he was a mere licensee, to whom the company owed
  no duty to keep its speeder in good condition or to operate it with
  caution.

Same—Duty Owing to Guest.
  5.  Assuming plaintiff to have been a guest of defendant railway
  company—one present on the gasoline speeder by invitation, implied
  as to the company and express as to the roadmaster—the duty owed
  him was to use reasonable care for his safety.

Same—Negligence—Evidence—Insufficiency.
  6.  Evidence *held* not to show that the breaking of a bolt on a gaso-
  line speeder—the primary cause of the derailment—was due to any
  defect known, obvious or observable to defendants or to a failure to
  adequately inspect the car, and was therefore insufficient to fasten

As to injuries in performance of duty outside scope of original employ-
ment, see note in 48 L. R. A. 796.
  As to scope of employment generally, see note in L. R. A. 1915E, 892.
  On the question of applicability of rule *res ipsa loquitur* as between master
and servant, see note in L. R. A. 1917E, 4.

liability upon them for breach of duty owing to plaintiff, as the rail-way company's guest, to use reasonable care for his safety.

Same—*Res Ipsa Loquitur*—When Inapplicable.

7.    Where the happening of an accident is not necessarily inconsistent with ordinary care, the doctrine of *res ipsa loquitur* cannot apply.

*Appeal from District Court, Missoula County; Theo. Lentz, Judge.*

ACTION by William H. Glover against the Chicago, Milwaukee & St. Paul Railway Company and another. From a judgment for plaintiff, and an order denying them a new trial, defendants appeal. Reversed and remanded.

*Mr. Henry C. Stiff*, for Appellants, submitted a brief.

For the purpose of determining the question of the liability or nonliability of the company for his injuries, plaintiff was not an employee of the company, and his relation to the company was not different from what would have been that of a person who had never been in its employ. (*Myers* v. *Norfolk & W. R. Co.*, 162 N. C. 343, 48 L. R. A. (n. s.) 987, 78 S. E. 280; *Bennett* v. *Lehigh Valley R. Co.*, 197 Fed. 578; *Dodge* v. *Chicago Great Western R. Co.*, 164 Iowa, 627, 146 N. W. 14; *De Voe* v. *New York State Rys.*, 169 App. Div. 472, 155 N. Y. Supp. 12.)

Every person is presumed to know that a railway company does not carry passengers on hand-cars or gasoline speeders, which to a certain extent have taken the place of hand-cars, and that no employee in charge of such cars has the authority to create the relation of carrier and passenger between a railway company and any person whomsoever. This rule applies with special force to the plaintiff because of his occupation and the position held by him with the defendant company and the consequent opportunity he, for a long time, had of knowing the rules and practice in that regard. (*Chicago, B. & Q. Ry. Co.* v. *Casey*, 9 Ill. App. 632; *Burns* v. *Southern Ry. Co.*, 63 S. C. 46, 40 S. E. 1018; *Flower* v. *Pennsylvania R. Co.*, 69 Pa. 210, 8 Am. Rep. 251; *Sherman* v. *Hannibal & St. Joe Ry. Co.*, 72 Mo. 62, 37 Am. Rep. 423; *Whitehead* v. *St. Louis I. M. & S. Ry. Co.*,

22 Mo. App. 60; *Snyder* v. *Hannibal & St. Joe Ry. Co.,* 60 Mo. 413; *Dougherty* v. *Chicago, M. & St. P. Ry. Co.,* 137 Iowa, 257, 126 Am. St. Rep. 282, 14 L. R. A. (n. s.) 590, 114 N. W. 902; *Chrisco* v. *St. Louis & S. F. Ry. Co.,* 163 Mo. App. 540, 146 S. W. 1180.)

*Mr. Harry H. Parsons,* for Respondent, submitted a brief; *Mr. Edward Horsky,* of Counsel, argued the cause orally.

In this case it makes no difference whether the plaintiff be called an employee, a passenger or a licensee. In either capacity, as pleaded, the defendants owed him ordinary care. That he was a trespasser cannot be contended; he was an employee of defendant company, following a custom of riding on the gasoline car, at the invitation of the roadmaster, and on an errand to get supplies. No issue was ever raised or suggested that he was in any sense a trespasser. Nor was such ever suggested in the motion for nonsuit or defendant's offered instructions.

The roadmaster is the *alter ego* of the railway company. If he knew of or helped establish the custom, that is sufficient. (*Cleveland* v. *Pine Bluff etc. R. Co.,* 107 Ark. 93, 44 L. R. A. (n. s.) 687, 154 S. W. 191; *Thompson* v. *Chicago etc. R. Co.,* 18 Fed. 239, 5 McCrary, 542; *Lawrence* v. *Kaul Lumber Co.,* 171 Ala. 300, 55 South. 111.)

Whether Grimes was in the scope of his authority or not was for the jury. (*Barmore* v. *Vicksburg etc. R. Co.,* 85 Miss. 42, 63 Ann. Cas. 594, 70 L. R. A. 627, 38 South. 210; *Vicksburg S. & P. R. Co.* v. *Barmore,* 87 Miss. 273, 39 South. 1013; *Dalrymple* v. *Covey Motor Car Co.,* 66 Or. 533, 48 L. R. A. (n. s.) 424, 135 Pac. 91; *Penas* v. *Chicago etc. R. Co.,* 112 Minn. 203, 140 Am. St. Rep. 470, 30 L. R. A. (n. s.) 627, 127 N. W. 926; *Kwiechen* v. *Holmes & Hallowell Co.,* 106 Minn. 148, 19 L. R. A. (n. s.) 255, 118 N. W. 668; *Galveston, H. & S. A. Ry. Co.* v. *Currie,* 100 Tex. 136, 10 L. R. A. (n. s.) 367, 96 S. W. 1073; *Calley* v. *Lewis,* 7 Ala. App. 593, 61 South. 37; *Lawrence* v. *Kaul Lumber Co.,* 171 Ala. 300, 55 South. 111.)

On the question of custom and invitation, we invite attention to the following authorities: 6 Labatt, 2500, and note; *Lawrence* v. *Kaul Lumber Co.*, 171 Ala. 300, 55 South. 111; *Houston & T. C. R. Co.* v. *Bulger*, 35 Tex. Civ. App. 478, 80 S. W. 557; *Cogswell* v. *Rochester Mach. Screw Co.*, 39 App. Div. 223, 57 N. Y. Supp. 145; *Brennen* v. *Fair Haven etc. R. Co.*, 45 Conn. 284, 20 Am. Rep. 679; *Denison & S. R. Co.* v. *Carter*, 98 Tex. 196, 107 Am. St. Rep. 626, 82 S. W. 782; *The New World* v. *King*, 16 How. (U. S.) 469, 14 L. Ed. 1019.

Speeders, hand-cars and freight trains are all controlled, substantially, by the same law. (*Chicago etc. R. Co.* v. *Artery*, 137 U. S. 507, 34 L. Ed. 747, 11 Sup. Ct. Rep. 129; *Boyd* v. *Missouri Pac. R. Co.*, 236 Mo. 54, 139 S. W. 561; 249 Mo. 110, Ann. Cas. 1914D, 37, 155 S. W. 13; *McGrady* v. *Charlotte Harbor & N. R. Co.*, 66 Fla. 486, 52 L. R. A. (n. s.) 874, 63 South. 921; *Barmore* v. *Railway*, 85 Miss. 426, 3 Ann. Cas. 594, 70 L. R. A. 627, 38 South. 210; *Soderlund* v. *Chicago etc. R. Co.*, 102 Minn. 240, 13 L. R. A. (n. s.) 1193, 113 N. W. 449; *Moore* v. *Central Railway*, 47 Iowa, 688; *Salisbury* v. *Erie R. Co.*, 66 N. J. 233, 88 Am. St. Rep. 480, 55 L. R. A. 578, 50 Atl. 117; *Pool* v. *Chicago etc. Ry. Co.*, 53 Wis. 657, 11 N. W. 15; 56 Wis. 227, 14 N. W. 46; *Flynn* v. *Boston etc. Ry.*, 204 Mass. 141, 90 N. E. 521; *International & G. N. Ry. Co.* v. *Prince*, 77 Tex. 560, 19 Am. St. Rep. 795, 14 S. W. 171.)

*Mr. Geo. W Korte, Mr. Henry C. Stiff* and *Mr. Wm. L. Murphy,* for Appellants, submitted a brief in reply to that of Respondent; *Mr. Korte* argued the cause orally.

It is an undoubted presumption of law that a person riding upon a hand-car or engine, a freight train, or any other carriage of a common carrier which is evidently not designed for the transportation of passengers, is not lawfully there, and if he is allowed to be there by the permission of the carrier's employees, the presumption is against the authority of the employees to bind the carrier by such act. (*Powers* v. *Boston etc. R. Co.*, 153 Mass. 188, 26 N. E. 446; *Eaton* v. *Delaware etc. R. Co.*, 57 N. Y.

382, 15 Am. Rep. 513; *Hoar* v. *Maine Cent. R. Co.,* 70 Me. 65,
35 Am. Rep. 299; *Gardner* v. *New Haven & Northampton Co.,* 51
Conn. 143, 50 Am. Rep. 12; *Graham* v. *Railway,* 23 U. C. C. P.
541; *Sheerman* v. *Railway,* 34 U. C. Q. B. 451; *Chicago & A. R.
Co.* v. *Michie,* 83 Ill. 427.)

An invitation to ride on a freight train in contravention of
the rules of the company, from an employee engaged in the
operation of such train, will not render the company liable for
a negligent injury to a person accepting such invitation, unless
it is shown that the person extending such invitation was author-
ized by the company to do so. (*Pennsylvania Co.* v. *Coyer,* 163
Ind. 631, 72 N. E. 875; *Downey* v. *Chesapeake etc. Ry. Co.,* 28
W. Va. 732; *Ligo* v. *Newbold,* 24 Eng. L. & Eq. 507.) Unless
there is a common interest or mutual advantage, an invitation
cannot be inferred (*Chicago, I. & L. Ry. Co.* v. *Martin,* 31 Ind.
App. 308, 65 N. E. 591), and a disregard or violation of its rules,
or permission to ride upon cars, not designed therefor, from
complacent or faithless servants, is not enough to show acqui-
escence or an habitual disregard of such rules and sanction
thereof. (*Pennsylvania Co.* v. *Coyer,* 163 Ind. 631, 72 N. E.
875; *Snyder* v. *Hannibal & St. J. R. Co.,* 60 Mo. 413; *Powers* v.
*Boston & M. R. Co.,* 153 Mass. 188, 26 N. E. 446.)

Where plaintiff knew that the car was not designed for the
carrying of passengers, no presumption of authority to permit
him to ride thereon can be inferred. (*Clark* v. *Colorado etc.
R. Co.,* 165 Fed. 408, 19 L. R. A. (n. s.) 988, 91 C. C. A. 358.)
So, too, in the case at bar, the plaintiff, an experienced railroad
man, ought to be foreclosed from saying that, from the construc-
tion, nature and use of the speeder in question, Grimes had any
authority to permit him to ride thereon for his personal con-
venience, and in no manner connected with the work of oper-
ating the defendant's railroad. The language used between the
plaintiff and Grimes when it is claimed he was invited to ''come
on and ride'' amounts to no more than a mere license, at most.
(*Powers* v. *Boston & M. R. Co., supra; Hoar* v. *Maine Cent.
R. Co.,* 70 Me. 65, 35 Am. Rep. 299; *Bowler* v. *O'Connell,* 162

Mass. 319, 44 Am. St. Rep. 359, 27 L. R. A. 173, 38 N. E. 498; *Burns* v. *Southern Ry.*, 63 S. C. 46, 40 S. E. 1018.)

The cases cited by counsel in the brief in support of his claim that the roadmaster is the *alter ego* of the company, do not sustain his contention.

Some claim is made that Glover was an employee. How a man can be in one's employ when off duty is inconceivable. No such rule can be found in the books. (*Southern R. Co.* v. *Power Fuel Co.*, 152 Fed. 918, 12 L. R. A. (n. s.) 472, 82 C. C. A. 65; Shearman & Redfield on Negligence, 6th ed., 148; *Dodge* v. *Chicago Great Western R. Co.*, 164 Iowa, 627, 146 N. W. 14.)

MR. JUSTICE SANNER delivered the opinion of the court.

On June 18, 1914, the plaintiff (respondent here) was injured while riding upon a gasoline speeder driven by the defendant Grimes upon the defendant company's tracks between East Portal and Saltese, in this state. He claims the right to recover upon these allegations of his complaint: That he was at the time a telegraph operator employed by the defendant company at East Portal and was en route to Saltese for the purpose of obtaining groceries and other food supplies for himself; that the defendant Grimes was and still is a roadmaster of the railway company, whose authority as such extended over this and other portions of its line and who as such possessed and used said speeder; that the speeder was made to and did seat more than one person and was capable of running at a high and dangerous rate of speed; that after January 1, 1914 (at which time certain privileges of free transportation for foodstuffs theretofore extended by the company to its employees at East Portal were revoked), "it became and was the custom of the defendants to take or invite said employees at said place on said motor car and similar cars and convey and carry them to a station where said materials could be purchased and obtained, and elsewhere"; that on the day of the accident plaintiff boarded said speeder pursuant to such invitation; that unknown to him, but known, or by the exercise of due care knowable, to the de-

fendants, the speeder "was in a defective and dangerous condition, in that one of the iron bolts which had to do with holding and keeping in place one of the wheels thereof was loose, unconnected and wholly inadequate for said purpose, and at said time carelessly and negligently left and maintained in such condition"; that the defendants negligently failed to inspect the car or to warn the plaintiff of its defective condition; that with the car in such condition the defendants started with the plaintiff thereon downgrade from East Portal to Saltese, and "negligently and carelessly ran, operated and propelled said car at a high, rapid and dangerous rate of speed, so that, and by reason thereof, the said bolt so negligently and carelessly kept in said car came loose from said car, the rod holding said wheel in place by reason thereof came loose therefrom, and the said car, by reason thereof, while going at said careless and dangerous rate of speed, jumped the tracks * * * casting the plaintiff violently to the ground," inflicting the injuries referred to.

To this complaint demurrers and motions were addressed, and, these being overruled, separate answers were filed, the effect of which was to join issue and to plead that the derailment and plaintiff's injuries were due to his own misbehavior while riding said car.

The evidence adduced by the plaintiff tended to show the following: His journey to Saltese was to procure supplies for himself; it then was and for several months had been the custom for employees to be taken upon the speeders and motor cars of the company both ways from East Portal on private business of their own as well as upon company business—which custom was so open and notorious as to charge the defendants with knowledge thereof; on this particular occasion the plaintiff was personally invited by Grimes to go upon the speeder and did so to avoid paying the fare, amounting to twenty-five cents, upon the regular passenger train; they left a few minutes ahead of the passenger train which was scheduled to run over that stretch of track at not more than twenty-five miles an hour; the derail-

ment was caused by the distance rod between the wheels on one side of the speeder coming loose, due to the breaking of the bolt intended to keep the rod in place, and while the speeder, operated by Grimes, was traveling approximately thirty-five miles an hour.

The defendants, appealing from the judgment against them, as well as from an order denying their motion for new trial, insist that no actionable negligence is alleged in the complaint or established by the evidence.   It is elementary, of course, that [1] one who seeks a recovery for actionable negligence must show: (1) That the defendant was under a legal duty to protect him from the injury; (2) that the defendant failed to perform the duty; and (3) that the injury was proximately caused by the defendant's delinquency.   (*Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Barry* v. *Badger, ante,* p. 224, 169 Pac. 34.)   The plaintiff insists that he has met these requirements, although upon just what theory of duty neglected is not very clearly explained.

As to Grimes, the plaintiff was undoubtedly a guest; as to the company, his relationship must have been (a) employee, (b) passenger, (c) licensee, (d) guest, or (e) trespasser.   That he was not an employee within any rule of obligation due to [2] him as such, or conversely, within any rule by which the company could be answerable for his acts, is perfectly clear. He was off shift, journeying neither to nor from his work, engaged upon his own private mission, actuated in his choice of ways to reach his destination by motives entirely personal. (*Ellinghouse* v. *Ajax Livestock Co., supra;* 18 R. C. L., pp. 580–584, sec. 86 *et seq.*)   No recovery, therefore, can be justified upon the theory of duty arising out of the relation of master and servant.

It is equally clear that he was not a trespasser.   Suggestion [3] is made that the evidence on the part of the plaintiff shows a rule forbidding employees to ride upon the motor cars of the company; but whether this rule really existed at the time of the accident, or, if it existed, whether the plaintiff had knowledge

of it may well be doubted. If he had no knowledge of it, of course he could not be bound by it (*Pascoe* v. *Nelson*, 52 Mont. 405, 158 Pac. 317), and if it was more honored in the breach than in the observance—as the custom to the contrary would seem to indicate—it could not control in the face of that custom (*Alexander* v. *Great Northern Ry. Co.*, 51 Mont. 565, 577, 154 Pac. 914). Granting the custom, and that the plaintiff was on the speeder pursuant to it, recovery could not be defeated on the ground that the company owed him no duty save to refrain from wanton or willful injury.

Although the plaintiff testified to the view that he was a passenger, we think this too must be negatived. With regard to the use of its speeders by employees engaged in missions of their own, the attitude of the company was, at most, one of permission, not obligation. It was plainly not bound by any law or agreement to carry them in this way. Indeed, the plaintiff makes no claim that he had a *right* to be so carried, but he shows a very clear perception that the company was not obliged to carry him in any way except for hire, or pursuant to a pass applied for and furnished, upon the trains regularly provided for passenger service, one of which was shortly to arrive. The complaint is not framed, the case was not tried, the jury were not instructed upon the passenger theory, and therefore it must be eliminated as a tenable basis for the recovery in this case.

It is our present view that, as to the company, the status of [4] the plaintiff was that of a mere licensee. We think this follows from the fact that, aside from the invitation of Grimes, no warrant for using the speeder is shown, other than acquiescence implied from custom. If this be true, plaintiff accepted the conditions as he found them; the company owed him no duty to keep its speeder in good condition or to operate it with caution. (17 R. C. L. 594, sec. 98; *Martin* v. *Northern Pac. Ry. Co.*, 51 Mont. 31, 37, 38, 149 Pac. 89; Pollock on Torts, 10th ed., pp. 544–547.) Nor was Grimes vested with authority to create any higher relation. The plaintiff calls him an officer of the company and not an employee; but his duties were circum-

scribed, confined to maintenance of way; he was furnished with the speeder as he was with a pass and a freight permit to facilitate the performance of these duties; beyond this he had no authority and could no more create a relationship to the company, with its liabilities, through sharing the speeder than he could through sharing the permit or the pass.

Let it be assumed, however, that the plaintiff was something [5] more than a mere licensee—say a guest—one present by invitation, implied as to the company, express as to Grimes. Thus, both defendants stand or fall by the same test, to-wit, the duty to use reasonable care for the plaintiff's safety. (*Montague* v. *Hanson,* 38 Mont. 376, 383, 387, 99 Pac. 1063.) In what way was that duty breached under the pleadings and evidence here presented? The breach of duty alleged is that [6] the defendants suffered the car to get out of order and ran it at a rate of speed which was excessive and dangerous *in view of its condition.* In other words, the defective condition and the speed—not either alone—caused the derailment and the injury. This being true, it does not suffice to show that the speed was great, but it must appear that under conditions known, or with reasonable care knowable, to the defendants, the speed was dangerous; or, to put the matter in another form, we must determine that there was a negligent failure to know or correct the condition of the car. And here the evidence is altogether lacking as to either defendant. It is inferable from the evidence that the bolt above referred to broke and thus released the distance rod, causing the wheels to lose their proper distance or alignment. There is not a word to indicate that the break was due to any defect known, obvious or observable either to the company or to Grimes, and nothing to warrant the view that either the company or Grimes had failed to adequately inspect the car before its use. Apparently the plaintiff proceeded upon the theory that such a showing was unnecessary, although failure to inspect was alleged in the complaint; but, as the happening of the accident is not necessarily inconsistent with [7] ordinary care, *res ipsa loquitur* cannot apply. In this

respect, therefore—and this is the only respect in which the defendants could be held to answer—the case fails.

It is unnecessary to consider the other assignments of error, which in fact are not argued in appellants' brief. The judgment and order appealed from are reversed and the cause is remanded for retrial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.