CARAZO, DEMANDANTE Y APELANTE, *v.* GUZMÁN,
DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre divorcio.

No. 2513.—Resuelto en julio 14, 1922.

DIVORCIO—CONTRA-DEMANDA—TRATO CRUEL—DISPARIDAD ENTRE LAS ALEGACIONES Y LA PRUEBA.—No comete error la corte de distrito al dictar sentencia de divorcio a virtud de una contra-demanda en que se alegan hechos constitutivos de trato cruel, aun cuando la prueba no corresponda en todos sus detalles con las alegaciones, si dicha prueba se admite sin objeción y es pertinente y aparecen de la misma hechos determinantes del trato cruel alegado como motivo fundamental para solicitar el divorcio.

Los hechos están expresados en la opinión.
Abogado del apelante: *Sr. J. J. Ortiz Alibrán.*
Abogado de la apelada: *Sr. J. Martínez Dávila.*

El Juez Presidente Sr. del Toro, emitió la opinión del tribunal.

Teófilo Carazo entabló demanda de divorcio contra su esposa Andrea Guzmán. La demandada negó los hechos de la demanda que podían perjudicarla y a su vez por medio de contrademanda solicitó el divorcio.

Los hechos 3 y 4 de la contrademanda dicen:

"Que durante el último año que vivieron bajo el mismo techo la demandada y contra-demandante y el demandante y contra-demandado, éste en diversas ocasiones, casi a diario injurió y maltrató a la demandada y contra-demandante con palabras tales como sinvergüenza, abandonada, indecente y puerca; y en diez y siete de marzo de mil novecientos diez y nueve le pegó en la cara públicamente, formando un fuerte escándalo en el que tuvo que intervenir la policía.

"Que la conducta del demandante y contra-demandado ha perjudicado grandemente la salud de la demandada y contra-demandante produciéndole una depresión nerviosa."

Fué el pleito a juicio y la corte dictó sentencia declarando sin lugar la demanda y con lugar la contrademanda y en su consecuencia roto y disuelto el vínculo matrimonial que unía a ambas partes, quedando los hijos bajo la patria potestad de la madre. No conforme el demandante, interpuso el presente recurso de apelación. Los errores señalados se refieren a la apreciación de la evidencia.

Hemos analizado cuidadosamente la prueba practicada y todos los jueces de la corte están conformes en que es insuficiente para sostener la demanda. En cuanto a si es suficiente o no para sostener la contrademanda, ha habido disparidad de criterios. La mayoría se decidió por la afirmativa.

En las alegaciones transcritas de la contrademanda se establece que el demandante injurió y maltrató a la demandada por medio de las palabras que se expresan y se alega una injuria específica ocurrida el 17 de marzo de 1919. Ade-

más se expone la depresión nerviosa y el perjuicio en la salud sufridos por la demandada a consecuencia de la conducta del demandante.

La declaración de la demandada ocupa quince páginas de los autos. Presenta un cuadro oscuro. "La vida de nosotros," dijo Andrea, y su dicho fué admitido sin oposición, "durante esos cuatro años fué una vida terrible, porque él no me quería las nenas, nunca, desde que salí encinta era un sufrimiento terrible porque él no quería que yo tuviera hijos. Tenía que tomar abortivos para complacerlo a él." Luego expresó, sin que tampoco se hiciera objeción a sus manifestaciones, "Los disgustos eran con la nena mayor * * *. El llegaba y cuando yo estaba en la cocina preparando el almuerzo, venía donde estaba la nena, y cogía le amarraba las manos y después la colgaba del coy, cuando no la ponía en el piso en el suelo y después cogía, había veces, que subía y la encontraba apretada por aquí, negra, y la buscaba y encontraba los diez dedos de él señalados, que la apretaba por aquí, cuando no por la cabeza * * *. Cuando encontraba que hacía eso pues empezaba a llorar y a decirle cómo hacía eso y él decía 'yo no quiero dar producto al mundo, yo la quiero a usted sola, yo no quiero muchachos.' "

El hecho ocurrido el 17 de marzo a que se refiere la contra-demanda, lo describe Andrea Guzmán así:

"Ese disgusto fué porque él me dijo aquel día por la mañana 'necesito la casa desocupada' y yo dije 'hombre, yo no puedo desocupar la casa,' dice 'le tengo una casa buscada,' entonces le dije 'yo no puedo mudarme de esta casa, porque la compré para vivir en ella', y él me dijo 'tiene que desocuparla para la tarde', le dije 'no la puedo desocupar porque es de mi propiedad', y fué donde Julio Vélez y le habló una casa, y vino pàra acá y dice 'ya tiene casa buscada,' y le dije 'no, ésta la compré y ésta tengo que vivir', entonces él me dijo 'pues no hay diario hoy, no tiene usted diario', y entonces yo fuí donde la Inspectora, porque le había dado órdenes a él que me diera el diario todos los días, y entonces cuando fuí al teléfono y

llamé la inspectora, le dije 'Carazo me ha suspendido el diario', y la Inspectora me dijo 'dígale a Carazo que venga al aparato', y cuando vine del teléfono para la casa encontré a Carazo metido allá, que llevaba la nena arrastrándola por la calle, y cuando ví a la nena arrastrándola por la calle, la cogí y le dije 'para dónde la llevas?' y la nena gritando, porque no lo quiere a él y él cogió y dijo 'vente hija' y le dijo ella 'no, ésta es mi mamá', y llevé a casa la nena, que se raspó toda que la tuve que traer a San Juan; entonces yo cogí y me subí para arriba y me puse una bata y fuí donde el jefe de la policía y le dije que viniera acá y cuando llegó el jefe él quería quitarme la nena y empezó a halar para allá y yo para acá, y no obedeció las órdenes del jefe y entonces la gente empezó a gritar, y la mamá de él, y entonces él siguió forzando con la nena y el jefe y entonces vino un hermano de él y me cogió por el pelo y vino la señora de él y me acometió, y todos me dieron.''

''Pero a usted le hizo algo en ese disgusto?

''Que me arrastró por el pelo y a más tengo golpes aquí, que el Sr. Julio Vélez fué a defenderme.''

Con respecto a otros hechos dijo:

''El llegó de la escuela como a las once y media y yo me fuí a servirle el almuerzo como costumbre, y cuando sentí la nena llorando corrí para arriba, y encontré la nena amarrada de la pata del ropero, con un pedazo de media amarrada, y la nena no tenía en esa época más que unos siete meses, una cosa así, y yo encontraba a la nena en esa posición y me tenía que indignar.

''Usted llegó y qué pasó allí?

''Cuando me puse a soltarla, y me tiró una patada por detrás y me tiró contra la nena.

''Cuántas veces le pegó él a usted entonces?

''Cada vez que teníamos disgustos, le puedo enseñar mordidas que él me daba y que me cogía por el pelo y me batía.

''El atendía a las necesidades suyas y de su hija?

''Durante estaba en casa?

''Sí.

''Algunas veces, en casa de Sosa me suspendió el diario, que tenían que mandarme comida de mi casa.

''Con qué motivo vió usted a la Inspectora?

"Resulta que él después que se seguía portando como de costumbre, y aunque él venía a la casa con otros modales excelentes, diciéndome cosas, y un día acompañándolo a su escritorio me puse a limpiarlo como de costumbre, y encontré una carta de una muchacha.

"Dte.—Me opongo a la carta que haya encontrado porque la carta es el mejor testimonio.

"Juez.—Lo que no puede hacer es decirnos el contenido."

En relación con las palabras injuriosas a que se refiere la contrademanda, Andrea Carazo no dió una declaración específica, limitándose a expresar que en los constantes disgustos que con ella tenía "me decía palabras terribles."

Refiriéndose a cierta carta dijo la esposa:

"Encontré una carta con un retrato y una postal, y cuando él llegó a almorzar yo le dije 'Oiga Carazo, mire esta prueba, qué es esto?' y dice 'eso no es nada, esa va a ser mi esposa cuando me divorcie de usted', y yo empecé a llorar y él dice 'Llora amargamente que me voy a divorciar de usted para casarme con ella.' "

De este hecho tuvo conocimiento la inspectora de escuelas, siendo motivo de nuevos disgustos.

Se sostiene que el acto específico alegado en la demanda no se probó. Quizás no se demostrara exactamente que fué el demandante el que pegó en la cara públicamente a la demandada en el día indicado, pero se probó con lujo de detalles el escándalo ocurrido en dicho día. La demandada fué atacada públicamente por el demandante y su familia, agarrándola por el pelo un hermano del demandante. El demandante intervino y es responsable del acto. La disparidad que se advierte entre lo alegado y probado no es trascendental. El hecho es esencialmente el mismo. Los detalles, la forma en que se realizó es lo que varía. Tan honda fué la impresión que produjo en uno de los espectadores, Asunción Román, "el atropello cometido con una pobre infeliz mujer," que por su propia voluntad, y temiendo que "quisieran ocultar el escándalo," según declaró en el acto del

juicio, vino a San Juan a pedir el auxilio del fiscal del distrito.

Aparece de los autos, además, que el testigo Domingo Sosa, sin que el demandante se opusiera, declaró así:

"Usted tenía amistad con él?

"Sí, ellos tomaban en la tienda.

"Usted sabe qué clase de vida hacían ellos, si era tranquila, feliz o era una vida de pelea?

"Ellos por lo pronto, hasta un día que ví yo un disgusto que hubo allí, grande, y trancaron la puerta y al trancar la puerta oí yo el alboroto de ellos dos, y me tiré por la tienda y descerrajé la puerta, al descerrajar la puerta me encontré con ellos dos peleando, los dos solos y la niña llorando, y dije 'qué pasa?', y él seguido se salió de encima de ella y se tiró a la calle y dice ella 'Ay, que me quiere matar a mi hija', pero yo me fuí a mi tienda."

La prueba debe corresponder con las alegaciones. Esta es la regla. Pero cuándo la prueba se presenta y se admite sin objeción y es pertinente, puede la corte apreciarla. El apelante no levantó en su alegato cuestión alguna de incongruencia entre lo alegado y probado, pero habiéndose discutido la materia entre los jueces, parece conveniente indicar que la conclusión a que ha llegado la mayoría descansa en el caso de *Ellinghonsen* v. *Ajax Live Stock Company*, 51 Mont. 275, y en la amplia nota al mismo que aparece en L. R. A., 1916 D, 841.

Estando convencidos de la legalidad y justicia de la sentencia, creemos que estamos en el deber de confirmarla.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey, Hutchison y Franco Soto.

El Juez Asociado Sr. Wolf disintió.