JONOSKY, ADMR., RESPONDENT, *v.* NORTHERN PACIFIC RY. CO., APPELLANT.

(No. 4,066.)

(Submitted December 12, 1919.   Decided January 2, 1920.)

[187 Pac. 1014.]

*Railroads—Trespassers—Action for Death—Negligence—Licensees—Common Law.*

Personal Injuries—Actionable Negligence.
    1.   Actionable negligence arises only from breach of legal duty.
Same—Railroads—Duty Owing to Trespassers.
    2.   The only duty owing by a railway company to a trespasser upon its tracks is to refrain from wantonly or willfully injuring him after discovering his presence in a position of peril.
Same—Implied Invitation—Implied License—Definition.
    3.   An invitation is inferred where there is a common interest or mutual advantage; a license is implied where the object is the mere pleasure, convenience or benefit of the person enjoying the privilege.
Same—Railroads—Duty Owing to Licensee.
    4.   Under the above rule (par. 3), decedent, who was fatally injured while attempting to crawl under the coupling between two cars of a freight train standing in defendant company's yards, rather than take a more circuitous route and cross at a street crossing, was a bare licensee, to whom defendant owed no duty other than that of not knowingly and willfully causing him harm.
Same—Duty Owing to Licensee—Common-law Rule.
    5.   Under the common law adopted in this state, in the absence of legislative declaration to the contrary, the owner of premises owes to a licensee no duty as to their condition, save that of not knowingly exposing him to hidden perils or wantonly and willfully causing him harm; the licensee enjoying the license subject to the concomitant perils arising from the owner's use in the ordinary course of business.

Common Law—Rule of Decision in State.

6.   The common law of England, so far as not repugnant to or incon-
sistent with the federal or state Constitution or the laws of this
state, is the rule of decision in all the courts of the state.

*Appeal from District Court of Silver Bow County; J. J.
Lynch, Judge.*

ACTION by Joseph Jonosky, as administrator of the estate of
Chester Jonosky, deceased, against the Northern Pacific Railway
Company. Judgment for plaintiff. Defendant appeals. Re-
versed, with directions to dismiss the action.

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch & Hall,*
for Appellant, submitted a brief; *Mr. E. M. Hall* argued the
cause orally.

At common law the rule is that railroad companies owe no
duty to trespassers or mere licensees other than to refrain from
willful or wanton injury to them and to use reasonable care to
prevent injury after discovering them in danger, even though
such trespassers or licensees have been using the company's
premises or tracks for a long time without objection or protest.
(Elliott on Railroad, secs. 1250–1252.) No statute has ever
been enacted in this state modifying this rule of the common
law. In fact, the common-law rule has been so frequently an-
nounced and followed in this state that it is the settled law here
regardless of how other jurisdictions may have modified it by
statute or court decisions. *Egan* v. *Montana Central Ry. Co.,*
24 Mont. 569, 63 Pac. 831, is the leading case in this state.
There is no distinction between that case and the case at bar.
The *Egan Case* has been repeatedly cited and followed in later
decisions of this court and in no case has the doctrine there
announced been overruled. (See *Beinhorn* v. *Griswold,* 27
Mont. 79, 91, 94 Am. St. Rep. 818, 59 L. R. A. 771, 69 Pac.
557; *Driscoll* v. *Clark,* 32 Mont. 172, 185, 80 Pac. 1, 373; *Mon-
tague* v. *Hanson,* 38 Mont. 376, 382, 99 Pac. 1063; *Conway* v.
*Monidah Trust,* 47 Mont. 269, 277, L. R. A. 1915E, 500, 132
Pac. 26; *Dahmer* v. *Northern Pac. Ry. Co.,* 48 Mont. 152, 162,

136 Pac. 1059, 142 Pac. 209; *McLaughlin* v. *Bardsen,* 50 Mont. 177, 189, 145 Pac. 954; *Fusselman* v. *Yellowstone Valley L. & I. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473.)   From the foregoing cases the rule appears to be settled that the duty a railway company owes to a mere licensee on its premises without invitation express or implied is no different than the duty it owes to a trespasser.   A railroad company is no more required to warn or look out for infant than for adult trespassers. (4 Ann. Cas. 680 and note; 16 Ann. Cas. 247 and note.)

In other states the rule announced in the Egan and other Montana cases has been repeatedly applied, and this is particularly so in cases where the injuries were received in railway switch-yards containing a large number of tracks and under circumstances similar to those in this case.   (*Central R. R. & Banking Co.* v. *Rylee,* 87 Ga. 491, 13 L. R. A. 634, 13 S. E. 584; *Georgia R. & B. Co.* v. *Fuller,* 6 Ga. App. 454, 65 S. E. 313; *Malott* v. *Union Pac. Ry. Co.,* 99 Kan. 115, 160 Pac. 978; *Barney* v. *Hannibal etc. Ry. Co.,* 126 Mo. 372, 26 L. R. A. 847, 28 S. W. 1069; *Scharf* v. *Spokane etc. R. Co.,* 92 Wash. 561, 159 Pac. 797; *McCoy's Admr.* v. *Williamson & P. C. R. Co.,* 174 Ky. 186, 192 S. W. 45; *Masser* v. *Chicago, R. I. & P. Ry. Co.,* 68 Iowa, 602, 27 N. W. 776; *Anternoitz* v. *New York etc. Ry. Co.,* 193 Mass. 542, 79 N. E. 789; *Catlett* v. *St. Louis etc. Ry. Co.,* 57 Ark. 461, 38 Am. St. Rep. 254, 21 S. W. 1062; *Katzinski* v. *Grand Trunk Ry. Co.,* 141 Mich. 75, 104 N. W. 409; *Atchison etc. Ry. Co.* v. *Plaskett,* 47 Kan. 107, 112, 26 Pac. 401; *Thomas* v. *Denver etc. Ry. Co.,* 60 Colo. 302, 153 Pac. 440; *Union Stockyard etc. Co.* v. *Butler,* 92 Ill. App. 166, 172; *Smalley* v. *Rio Grande W. Ry. Co.,* 34 Utah, 423, 98 Pac. 311; *Wright* v. *Boston & A. R. Co.,* 142 Mass. 296, 7 N. E. 866.)

We appreciate the fact that there are a number of cases holding that where the public for years has been accustomed to cross the tracks of a railway company upon a well-defined path with the acquiescence of the company, although without its express license or consent, a license to do so would be presumed and the company required to take reasonable precautions to avoid in-

juring persons so using the track. In most of such cases the facts show active acquiescence, or some affirmative act or conduct upon the part of the company amounting to an implied invitation. In a number of these cases the facts show reckless conduct or gross negligence on the part of the company, bringing them under the rule announced in *McLaughlin* v. *Bardsen,* 50.Mont. 177, while a few of the cases are to the effect that a mere tacit or negative permission by a railway company for people to cross its tracks amounts to a license for them so to do and imposes a duty to keep a lookout for them. These latter cases are directly in conflict with the law of this state as announced in the Egan and other cases cited above and contrary to the weight of authority.

Contributory negligence: If the boy was capable of appreciating the danger into which he was entering, and if the evidence shows that he voluntarily crawled over or between the cars when he could have passed safely through an open space only a few feet west, then there can be no recovery. (*Wolfe* v. *Peirce,* 24 Ind. App. 680, 57 N. E. 555; *Martin* v. *Northern Pac. Ry. Co.,* 51 Mont. 31, 149 Pac. 89.) As to whether a child is capable of contributory negligence, as a matter of law, depends largely upon the facts in each case. (*Mason* v. *Northern Pac. Ry. Co.,* 45 Mont. 474, 124 Pac. 271.)

*Messrs. Harry* and *William Meyer,* for Respondent, submitted a brief; *Mr. Harry Meyer* argued the cause orally.

Counsel for appellant rely to a large extent upon the decision of this court in the case of *Egan* v. *Montana Central Ry. Co.,* 24 Mont. 569, 63 Pac. 831, and contend that it is decisive of the case at bar, and further, that the *Egan Case* cannot be distinguished from this case. We contend (1) : That the two cases are clearly distinguishable, and (2) That the *Egan Case* is not sound law, has been criticised by this court in different decisions, and is in conflict with the weight of authority—the better reasoned and more recent cases—and is contrary and opposed to the doctrine of humanity which has, of late years, played so

large and important a part in the consideration of this class of cases. We also contend that this court in many of its decisions, which we shall hereafter cite, has, if not expressly, at least impliedly, disapproved of the doctrine laid down in the *Egan Case,* and that in at least one opinion one of the judges of this court expressly stated that he disagreed with the doctrine in the *Egan Case.* We refer to the case of *Neary* v. *Northern Pacific Ry. Co.,* 41 Mont. 480, 110 Pac. 226. In order to successfully contend that a case has been followed, we maintain that the facts in the subsequent case must be similar to the facts in the case claimed to have been followed. None of the Montana cases cited was decided on a statement of facts, even remotely similar to the facts in the *Egan Case.*

This court has never yet been called upon to decide a case in which the facts were similar or nearly similar to the facts in the case at bar. This statement is prompted by the fact that, in our opinion, this court has intimated upon more than one occasion that should a case in which the facts were similar to the facts in the case at bar ever be presented to it, the rule for which we are here contending would undoubtedly be approved by this court. We believe this statement justified by the decisions of this court and which we shall hereafter call to the court's attention.

If we understand the decision in *Nixon* v. *Montana etc. Ry. Co.,* 50 Mont. 95, Ann. Cas. 1916B, 299, 145 Pac. 8, correctly, it recognizes the doctrine of implied invitation, and that an implied invitation may be authorized by custom, it further recognizes the rule that, where a railroad company permits people to use its track as a highway by implied invitation, it must take note of such use and operate its instrumentalities accordingly. No decision by this court has ever modified this rule. (See, also, *Montague* v. *Hanson,* 38 Mont. 376, 99 Pac. 1063; *McLaughlin* v. *Bardsen,* 50 Mont. 177, 145 Pac. 954; *Gates* v. *Northern Pac. Ry. Co.,* 37 Mont. 103, 94 Pac. 751; *Fusselman* v. *Yellowstone V. L. & I. Co.,* 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473.)

We shall now call the court's attention to the cases from other jurisdictions sustaining the rule for which we are here contending. We first call attention to the case of *St. Louis & S. F. R. Co.* v. *Hodge* (Okl.), 157 Pac. 60, 63. This case is almost on all-fours with the case at bar, and because the facts are so nearly similar to the facts in the case at bar and because it is such a well-considered case, we cannot too strongly urge the court to read this opinion. It considers every point urged by the appellant, in this case, and upholds every contention made by us herein, citing a large number of cases from various jurisdictions in support of its conclusion.

The case of *Tutt* v. *Illinois Central Ry. Co.*, 104 Fed. 741, 44 C. C. A. 320, is a case very similar to the case at bar. It was there held to be a question of fact for the jury whether plaintiff was upon the property of the railroad company under an implied license which imposed upon it the duty of exercising care to discover his presence and to avoid injury to him. This case is particularly pertinent here, because, as in this case, the railroad company introduced evidence that it had instructed its employees to keep persons away from its tracks and that children had several times been driven away. To the same effect see *Northern Pac. R. R. Co.* v. *Curtz*, 196 Fed. 367, 116 C. C. A. 403. Another case almost on all-fours with the case at bar is the case of *O'Leary* v. *Pittsburgh etc. R. Co.*, 248 Pa. St. 4, 93 Atl. 771. To the same effect see the following cases: *New York, N. H. & H. R. Co.* v. *Kmetz*, 193 Fed. 603, 113 C. C. A. 471; *Swift* v. *Staten Island R. T. R. Co.*, 123 N. Y. 645, 25 N. E. 378, 379; *Lodge* v. *Pittsburgh & L. E. R. Co.*, 243 Pa. St. 10, 89 Atl. 790; *Doyle* v. *Portland Ry., L. & P. Co.*, 71 Or. 576, 143 Pac. 623; *Troy* v. *Cape Fear etc. R. Co.*, 99 N. C. 298, 6 Am. St. Rep. 521, 6 S. E. 77; *Davis* v. *Chicago & N. W. R. Co.*, 58 Wis. 646, 46 Am. Rep. 667, 17 N. W. 406; *Frye* v. *St. Louis, I. M. & S. R. Co.*, 200 Mo. 377, 8 L. R. A. (n. s.) 1069, 1076, 98 S. W. 566; *Morgan* v. *Wabash R. Co.*, 159 Mo. 262, 60 S. W. 195; *Wilhelm* v. *Missouri O. & G. Ry. Co.*, 52 Okl. 317, L. R. A. 1916C, 1029, 152 Pac. 1088; *Great Northern Ry. Co.* v. *Thompson*, 199 Fed.

395, 47 L. R. A. (n. s.) 506, 118 C. C. A. 79; *Anderson* v. *Great Northern Ry. Co.,* 15 Idaho, 513, 99 Pac. 91.

Under *Mason* v. *Northern Pacific Ry. Co.,* 45 Mont. 474, 124 Pac. 271, and *Conway* v. *Monidah Trust,* 47 Mont. 269, L. R. A. 1915E, 500, 132 Pac. 26, the question of contributory negligence was properly left to the jury.   Counsel, however, have seen fit to cite and quote from the decisions of other states to show that the question was one of law for the court to decide, and while we do not believe it to be an open question in this state, we take the liberty of calling the court's attention to the following cases, wherein it was held, in accordance with the rule in the *Mason Case,* that this question was properly for the jury, and in some of these cases the children injured or killed were much older than Chester Jonosky.   (*Northern Pacific R. Co.* v. *Chervenak,* 203 Fed. 884, 122 C. C. A. 178; *Texas & N. O. R. Co.* v. *McLeod,* 62 Tex. Civ. 270, 131 S. W. 311; *Trent* v. *Norfolk & W. R. Co.,* 167 Ky. 319, 180 S. W. 792; *Gulf, C. & S. F. Ry. Co.* v. *Garrett* (Tex. Civ.), 99 S. W. 162; *Gesas* v. *Oregon S. L. R. Co.,* 33 Utah, 156, 13 L. R. A. (n. s.) 1074, 93 Pac. 274; *Cahill* v. *E. B. & A. L. Stone & Co.,* 153 Cal. 571, 19 L. R. A. (n. s.) 1094, 96 Pac. 84; *Hammond W. & E. C. etc. R. Co.* v. *Blockie,* 40 Ind. App. 497, 82 N. E. 541; *Denver City Tramway Co.* v. *Nicholas,* 35 Colo. 462, 84 Pac. 813; *St. Louis & S. F. R. Co.* v. *Hodge* (Okl.), 157 Pac. 60, 69; *Lodge* v. *Pittsburgh & L. E. R. Co.,* 243 Pa. St. 10, 89 Atl. 790; 1 Thompson on Negligence, section 310.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Immediately east, south and west of its passenger station in Butte are the yards owned and operated by the Northern Pacific Railway Company.   Through these yards, running from east to west, are the main-line tracks and some twenty or more tracks parallel thereto, with the necessary connecting switches.   These tracks are in constant use in moving trains through the yards, in storing cars, in making up and breaking up trains, in mov-

ing cars to and from warehouses and to and from loading and unloading spurs. Several city streets, including California Avenue, extend from the north to, and terminate at, the north line of the yards. Some distance south of the yards there is a considerable number of houses occupied by people not connected with the business of the railway company. These houses are within the city limits and occupy regularly laid out lots and blocks, the blocks being separated by streets, running north and south, which bear the same names as the streets north of the yards. On Harrison Avenue, at the east end of the yards, there is a public street crossing, and at the west end, on Kaw Avenue, there is another. Between these two streets, a distance of approximately 200 rods, there is no public highway, street or other thoroughfare across these yards.

On the afternoon of April 19, 1916, about thirty freight cars, all coupled together, were standing on track 11 in the yards. The two cars farthermost to the west were immediately west of the west line of California Avenue extended to the south, the east end of the string of cars being about 1,100 feet farther east. In the course of business it became necessary for the railway employees to remove the twelfth car from the east end of the string of cars, and to effect this purpose a locomotive backed on to the east end of track 11 and against the easternmost car of the string with sufficient force to cause the coupling to be made automatically, and this force drove all the cars to the west three or four feet. Just at the instant of the impact, Chester Jonosky, a minor, was crawling under the coupling between the second car and third car from the west end of the string of cars. The car-wheel of the third car passed over his left leg and injured his right leg. As the result of these injuries, the boy died a few hours later, and this action by the administrator of his estate was brought to recover damages.

It is alleged that for more than a year prior to the accident, children as well as adults were permitted by the railway company to cross and recross the tracks, particularly at a point where California Avenue on the north, if extended, would con-

nect with California Avenue south of the yards; that the custom of the people was known to the railway company and acquiesced in without objection, and by reason thereof, the duty was imposed upon the company to exercise reasonable care to keep a lookout for children who might be crossing the yards, and to give appropriate warning of its intended movements of cars; that it failed in both respects, and that the death of the boy was caused proximately by the failure of the railway company to discharge this duty. The answer is substantially a general denial.

Witnesses in behalf of the plaintiff testified that for a considerable period prior to the injury the people living south of the tracks had habitually traveled back and forth across the yards as a short-cut to, or convenient means of reaching, points north of the yards and to avoid the longer route by way of the public crossings; that this custom was known to the railway company and suffered to prevail without objection, so far as the witnesses knew, and one witness, a school girl, testified that on two or three occasions employees of the company had assisted her in getting between coupled cars standing in the yards.

There is not a suggestion in the evidence that a walk had been constructed across the tracks; that the travel had followed any well-defined route over the tracks; that the yards could be used by these people without materially interfering with their proper use by the company, or that the company had in any manner held out to these people or induced them to believe that the yards could be crossed in safety, or that it was intended to permit the use of any portion of the yards, or the yards in their entirety, as a public crossing, but, on the contrary, the employees of the company working in the yards testified in effect that every reasonable effort had been expended to prevent the use of the yards by these people and particularly by children; that appeals had been made to the police department and to the school authorities to assist in keeping children out of the yards, and in this they were corroborated by the chief of police and the truant officer.

Upon the trial, and over defendant's objection, the court instructed the jury that, as to licensees, the railway company owed the duty to exercise reasonable care in the management and running of its trains to protect them from injury and refused defendant's offered instruction to the effect that, as to licensees, the company was under no duty to keep a lookout or give warning of the intended movement of cars in the yards. The trial resulted in a verdict for the plaintiff, and from the judgment entered thereon, this appeal is prosecuted.

Counsel for appellant contend that the boy was a trespasser, or, at best, a licensee. Counsel for respondent insist that he was a licensee, and for the purpose of this appeal he will be treated as such. The two instructions above, then, fairly present the conflicting views of the respective parties upon the law governing this case.

The action is grounded in the alleged primary negligence of the railway company, and does not involve any element of the last clear chance doctrine, or the doctrine of attractive nuisances.

Actionable negligence arises only from a breach of legal duty [1] (*Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473), and therefore, to determine the correctness of the theory upon which this case was submitted, it is necessary to determine just what legal duty the company owed to Chester Jonosky at the time he was injured. If it owed him the primary duty to keep a lookout and give warning of the intended movement of cars in the yards, then this judgment should be affirmed; if it did not, plaintiff has no cause of action.

Decided cases almost without number may be found which assume to define the legal relationship existing between a railway company and a person injured on its tracks. These cases cover every gradation of the relationship from that existing between the company and its employee rightfully in the position, in the discharge of his duties, to that existing between the company and a naked trespasser on the tracks without the semblance of

right. In a few jurisdictions no distinction is drawn between the measure of duty owed by the company to its employee, on the one hand, and the trespasser, on the other; but these cases are exceptional. In Arkansas and Tennessee, and possibly in other states, this rule is established by statute. With the excep-
[2] tions noted, it may be said that the rule is universal that as to a trespasser the company owes no primary duty. Its duty is of a negative character: to refrain from wantonly or willfully injuring him after discovering his presence in a position of peril. Passing to a consideration of the duty owed to a
[3] licensee, however, we enter a veritable maze of conflicting and contradictory decisions. . Much of the confusion arises from the failure of the courts to distinguish between a license and an invitation, and particularly between an implied license and an implied invitation. The distinction is not merely one of descriptive phraseology, but has its foundation in sound common sense. An invitation is inferred where there is a common interest or mutual advantage, while a license is implied where the object is the mere pleasure, convenience or benefit of the person enjoying the privilege. (*Bennett* v. *Louisville etc. R. R. Co.*, 102 U. S. 577, 584, 26 L. Ed. 235 [see, also, Rose's U. S. Notes] ; 2 White on Personal Injuries on Railroads, sec. 870.) The supreme court of Massachusetts has stated the rule as follows: "To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on there. There must, at least, be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." (*Plummer* v. *Dill*, 156 Mass. 426, 32 Am. St. Rep. 463, 31 N. E. 128; *Wright* v. *Boston & A. R. R.*, 142 Mass. 296, 300, 7 N. E. 866; Elliott on Railroads, sec. 1249; 1 Thompson on Negligence, sec. 987; 17 R. C. L. 566; 29 Cyc. 455.) The same distinction is made by the English courts. (*Holmes* v. *Northeastern Ry. Co.*, L. R. 4 Exch. 254.)

At the time he was injured, Chester Jonosky was not engaged [4] in any business in which the railway company was interested. He was crossing the tracks as a mere matter of convenience to himself, to save the effort of traveling the more circuitous route and crossing at the public street. At best, he was a bare licensee enjoying the gratuitous favor of the company in the use of its property. What, then, was the measure of the company's duty toward him?

At common law the rule was well settled. The owner of [5] premises owed to the licensee no duty as to the condition of the premises, save that he should not knowingly expose him to hidden perils or wantonly and willfully cause him harm. The licensee entered upon the premises at his own risk and enjoyed the license subject to the concomitant perils arising from the owner's use in the ordinary course of business. (Pollock on Torts, 10th ed., 544; 2 White on Personal Injuries on Railroads, sec. 860; *Burchell* v. *Hickisson,* 50 L. J. C. P. 101; *Hounsell* v. *Smyth,* 2 L. T. Rep. (n. s.) 440; *Bolch* v. *Smith,* 7 H. & N. 736; *Phillips* v. *Library Co.,* 55 N. J. L. 307, 27 Atl. 478; *Devoe* v. *New York, O. & W. Ry. Co.,* 63 N. J. L. 276, 43 Atl. 899; *Sweeny* v. *Old Colony & N. Ry. Co.,* 10 Allen (Mass.), 368, 87 Am. Dec. 644; *Romana* v. *Boston Elev. Ry. Co.,* 218 Mass. 76, Ann. Cas. 1917A, 893, 105 N. E. 598.) Thompson in his Commentaries on the Law of Negligence says: "A fair expression of the doctrine is that a railway company is under no obligation to protect a person on the track under an implied license to use its right of way, by taking steps to prevent harm to such person, unless it has so acted as to mislead him; but that the extent of its duty is not to injure him wantonly or willfully; and that one who enters the yard of a railway company under a mere license, assumes the risk of all dangers which are caused by a natural and proper use of the tracks and trains." (Sec. 1722.)

As opposed to the common-law rule is the so-called intermediate rule, adopted by a considerable number of American courts, substantially to this effect: "Where the track or the grounds of a railway are used by pedestrians as a passageway, for a con-

siderable time without objection, or with a tacit acquiescence on the part of the company, a pedestrian crossing over such grounds or along such tracks becomes a licensee in such a sense that he is not to be considered a mere trespasser acting at his peril, to whom the company owes no special duty until his peril is discovered, but that it becomes the duty of the company, in operating its road at such a place, to use increased prudence and caution in proportion to the danger to such persons, by maintaining a lookout upon its engines and trains, and, according to a considerable mass of authority, by giving *audible signals* on approaching such places, such as would be reasonably required on approaching a public crossing.'' Thompson says this doctrine is ''difficult to defend upon sound principle.'' (2 Thompson on Negligence, par. 1724, p. 426.)  Concerning it, Elliott says: ''This rule seems to us to be not only contrary to the weight of authority, but also impracticable and in violation of the true principle that should govern such cases.  If it be true, as generally conceded, that a licensee takes his license subject to the 'concomitant risks and perils,' he must surely take it subject to the use of the road in the manner in which it was used at the time the license was granted, that is, subject to the running of trains in the ordinary manner without any special reference to him, and he occupies, therefore, to this extent, substantially the position of a trespasser.  In other words, the company owes him no duty of active vigilance to specially look out for and protect him, for he must know that his license is subject to all risks incident to the use of the track by the company in the same manner in which it was used at the time the license was granted, and that the company assumes no new obligation or duty.  Indeed, it seems to us that he is bound to know that a railroad company has no power to license the use of its tracks in such a manner as to interfere with its duties to the public as a common carrier.  If it owes a duty to every bare licensee to run its trains with reference to him, to look out for him, to signal, to slow up, and, perhaps to stop wherever it has reason to expect him, it can do little else, its trains cannot be on time

and the traveling public must suffer.'' (3 Elliott on Railroads, sec. 1250.)

Upon the facts, this case cannot be distinguished from *Egan* v. *Montana C. Ry. Co.*, 24 Mont. 569, 63 Pac. 831. In the *Egan Case* this court followed the common-law rule. The plaintiff was considered first as a trespasser and the general rule announced as above. The court then proceeded: ''But if it be conceded that at the time of the accident the plaintiff was upon the track by tacit permission only, without any invitation, express or implied, his case is not bettered, for he went and remained there at his own risk, and to such a licensee by sufferance and tolerance (if the expression may be used to describe the plaintiff) no duty was imposed by law on the defendants other or greater than they would have owed to a naked trespasser. Sound reason and the decided weight of authority are in accord with these views.'' The doctrine of that case, as applied to a licensee, has been affirmed in *Beinhorn* v. *Griswold*, 27 Mont. 79, 94 Am. St. Rep. 818, 59 L. R. A. 771, 69 Pac. 557, and in *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063; and the same rule of liability was applied in *Glover* v. *Chicago, M. & St. P. Ry. Co.*, 54 Mont. 446, 171 Pac. 278.

Counsel for respondent contend that by declarations contained in later cases this court has discredited the rule of the *Egan Case*, and, if not, that it is now time that the rule was abandoned altogether. With reference to the first contention it is sufficient to say that counsel are mistaken. A careful review of the cases cited will disclose that the rule of liability, as applied to a licensee, has been adhered to consistently ever since the decision of the *Egan Case*. The argument in support of the second contention should be addressed to the legislative assembly. This court is not a law-making body.

When the territory of Montana was organized, one of the [6] firsts acts of the legislative assembly was to declare that the common law of England should be the rule of law and decision in all the courts, except in so far as it was inconsistent with the Organic Act or the Acts of the territorial legislature.

(Bannock Statutes, sec. 356.)     That Act was continued in force from January 11, 1865.     When the Codes were adopted in 1895, it was declared: ''The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States or the Constitution or laws of this state or of the Codes, is the rule of decision in all the courts of this state.'' As if to make assurance doubly sure, that declaration was repeated three times.     It was carried into the revision of 1907 and is now found in sections 3552, 6213 and 8060, Revised Codes.     The rule has not been altered by our legislature, nor does it conflict with the supreme law of the land, or with the Constitution or statutes of this state.     For this court to assume to change it, would be nothing short of judicial legislation.

Under the decision of the *Egan Case* and other cases approving it, the complaint does not state a cause of action, and under plaintiff's own theory, it cannot be made to do so.     The judgment is therefore reversed and the cause is remanded, with directions to dismiss the action.

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY, MATTHEWS and COOPER concur.

Rehearing denied February 24, 1920.