CONLEY, APPELLANT, *v.* CONLEY, RESPONDENT.

(No. 6,937.)

(Submitted September 21, 1932. Decided October 26, 1932.)

[15 Pac. (2d) 922.]

*Mr. E. G. Toomey* and *Mr. T. J. Walker,* for 'Appellant, submitted a brief and argued the cause orally.

*Mr. R. F. Gaines,* for Respondent, submitted a brief and argued the cause orally.

430

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff wife brought this action to recover damages from the defendant husband for personal injuries sustained by her, caused, she alleges, by the negligence of defendant's chauffeur, while she was riding, at defendant's invitation, as a passenger in defendant's automobile. A demurrer to the complaint was sustained, and, plaintiff refusing to amend, judgment went against her. She has appealed from the judgment.

The question now presented, may one spouse sue the other for a personal tort, is one of first impression in this state. In order to answer it correctly it is necessary to recall familiar rules of the common law as a predicate to the proper construction of the statutes relied on by counsel for plaintiff.

By the common law the husband at the time of the marriage became entitled to the wife's personal property, and he was entitled to her earnings during coverture; likewise to the wife's chattels real as in the nature of an executory gift; also the husband was entitled to a freehold in the wife's real estate—to an estate for life therein and to its beneficial enjoyment. (Schouler on Marriage, Divorce, Separation and Domestic Relations, secs. 145 et seq., 186, 187.)

The legal existence of the wife during coverture was merged in that of the husband. "Generally speaking, the wife was incapable of making contracts, of acquiring property or disposing of the same without her husband's consent. They could not enter into contracts with each other, nor were they liable for torts committed by one against the other." (*Thompson* v. *Thompson*, 218 U. S. 611, 21 Ann. Cas. 921, 30 L. R. A. (n. s.) 1153, 54 L. Ed. 1180, 31 Sup. Ct. Rep. 111; 30 C. J. 955; 13 R. C. L. 1395.)

With certain exceptions, not material here, a married woman cannot sue at common law, "unless it be jointly with her husband, for she is deemed to be under the protection of her husband, and a suit respecting her rights must be with the assent and co-operation of her husband. (Mitf. Equity Pl., by Jeremy, 28; Edwards on Parties in Equity, 144, 153; Calvert on Parties, Ch. 3, sec. 21, pp. 265, 274, 6 How.)" (*Barber* v. *Barber,* 21 How. (U. S.) 582.)

"For injuries suffered by the wife in her person or property, such as would give rise to a cause of action in favor of a *femme sole,* a suit could be instituted only in the joint name of herself and husband. (1 Cooley on Torts, 3d ed., 472, and cases cited in the note.)" (*Thompson* v. *Thompson,* supra.) At common law neither spouse could sue the other.

In the middle of the last century the common-law doctrine, an outgrowth of feudalism, which merged the wife's legal personality and property in the husband, gave way before the impact of modern thought, couched in statutes familiarly known as the Married Women's Acts. The primary purpose of these Acts was to free the wife from the husband's domination in property matters; to accomplish that it was requisite to place the wife upon an equal footing with the husband as to the ownership, control and enjoyment of property, and as to contractual rights in general, with an equal right to resort to the courts. The intention was, in these respects, to place husband and wife upon a parity. (Id., sec. 8.)

The first territorial legislature modified the common-law rule to some extent. Sections 7 and 8 of the first Chapter of the Statutes of Montana (Bannack Laws, 43) read as follows: "Sec. 7. When a married woman is a party, her husband shall be joined with her, except when the action concerns her separate property, she may sue alone; when the action is between her and her husband, she may sue or be sued alone." "Sec. 8. If a husband and wife are sued together, the wife may defend for her own right."

In 1872 the legislative assembly passed an Act exempting the property of a married woman from the debts and liabili-

ties of her husband, unless for necessary articles procured for the use and benefit of herself and children under the age of 18 years, upon her filing a separate list of her property in the office of the county clerk. (Codified Stats. 1872, p. 521.)

In 1874 she was given the right to transact business in her own name by filing a declaration setting forth the nature of the business she intended to engage in and that she would be responsible in her own name for all the debts contracted by her in the conduct of the business. The law provided that, after filing the declaration, everything pertaining to the business should belong exclusively to her, and that she should not be liable for any debts of the husband; she was allowed all the privileges and made liable for all the legal processes provided by law against debtors and creditors. She was made responsible for the maintenance of her children. The husband was relieved of responsibility for any debts she might contract in the business unless his special consent be given in writing. (Laws Mont. 1874, p. 93.)

In 1887 the legislature enacted "An Act to declare and protect the legal and personal identity of married women," repealing all laws or portions of laws inconsistent therewith, and declaring "that from and after the passage of this Act, women shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all of her rights as a woman which her husband does as a man; and, for any injury sustained to her reputation, person, property, character or any material right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband can appeal in his own name alone * * * ." (Rev. Stats. 1887, sec. 1439, p. 1045.)

Chapter III, Title I, Part III, Division I, of the Civil Code of 1895 brought to our statutory law sections 210 to 257, inclusive, which supplanted all prior statutes on the subject, and these with the exception of those relating to dower, now appear in the Revised Codes of 1921 as sections 5782 to 5812, inclusive, without amendment. The present statutes insure to the

wife such property as she may own at the marriage and acquire afterwards, and give her the power to protect, control and dispose of the same in her own name free from the interposition of her husband. (Secs. 5792, 5810, 5811.) The spouses may hold real and personal property together, jointly or in common. (Sec. 5789.) Either may enter into any engagement or transaction with the other or with any other person respecting property which either might, if unmarried, subject in transactions between themselves to the general rules which control the actions of persons occupying confidential relations with each other. (Sec. 5786, Id.) At this point it is apt to remark that throughout the chapter, unless it be in sections 5791 and 5809, quoted hereafter, there is not seen the slightest intention to disturb the marital unity except as to property rights; on the contrary, the maintenance of the family is regarded with the highest solicitude.

Marriage is a personal relation arising out of a civil contract (sec. 5695). Husband and wife contract toward each other obligations of mutual respect, fidelity and support. (Sec. 5782.) The husband is the head of the family. (5783.) He may choose any reasonable place or mode of living, and the wife must conform thereto. (5783.) He is bound to provide, according to his means and condition in life, for her maintenance and support; if he is unable to do so she must assist him as far as she is able. (5784.) Neither husband nor wife has any interest in the property of the other, except as is made necessary by their mutual obligations of support, and neither can be excluded from the other's dwelling. (5784, 5785.) Labor performed by a married woman for a person other than her husband and children shall, unless there is a written agreement to the contrary, be presumed to be performed on her separate account. (5797.) Husband and wife cannot, by any contract with each other, alter their legal relation, except as to property and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation. (5787.) Neither

husband nor wife, as such, is answerable for the acts of the other or liable for the debts contracted by the other; provided, however, that the expenses for necessaries of the family and of the education of the children are chargeable upon the property of husband and wife, or either of them, and in relation thereto they may be sued jointly or separately. (5790.)

Especially notable is section 5803, which declares: "The property rights of the husband and wife are governed by this chapter, unless there is a marriage settlement containing stipulations contrary thereto."

None of the foregoing statutes "takes from the husband his marital rights, except as they pertain to property, and none of them relieves him from responsibilities, except as they relate to the wife's contracts and debts * * * . So far from an intent having been manifested on the part of the legislature to regard the family as simply a voluntary association of two persons, legally independent of each other, with their progeny, several of the changes have been in the direction of a unification of interests." (*Snyder* v. *People,* 26 Mich. 106, 12 Am. Rep. 302.)

Plaintiff's action is sought to be grounded upon the following sections of the Revised Codes of 1921: Section 5791. "A married woman in her own name may prosecute actions for injury to her reputation, person, property and character, or for enforcement of any legal or equitable right, and may in like manner defend any action brought against herself." Section 5809. "A married woman may sue and be sued in the same manner as if she were sole." Have these two sections, notwithstanding those which are in context with them, so completely altered the civil basis of marriage that the unity conception of the common law has been abrogated? The context sections quoted above would seem sufficiently to answer the question in the negative. We keep those in mind in determining the legislative intent.

Granting that either husband or wife may sue the other as if both were sole respecting property rights under statutory permission (without reference to a suit for divorce, alimony

or separate maintenance), does it follow that either can sue the other for a personal tort?

The right to maintain an action depends upon the existence ▉ of what is termed a cause of action, which is ordinarily considered as involving the combination of a right on the part of plaintiff and a violation of such right by defendant. (*Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960.)

At common law there was no right of action in either husband or wife for a personal tort of the other: neither had a cause of action against the other therefor. (*Austin* v. *Austin*, 136 Miss. 61, 33 A. L. R. 1388, 100 South. 591; *Strom* v. *Strom*, 98 Minn. 427, 116 Am. St. Rep. 387, 6 L. R. A. (n. s.) 191, 107 N. W. 1047.)

"All disabilities which the common law imposed upon husband and wife by reason of the marriage status still exist, except insofar as they have been modified by express statutory enactment." (*Heacock* v. *Heacock*, 108 Iowa, 540, 75 Am. St. ▉ Rep. 273, 79 N. W. 353.) Long ago this court admirably expressed the general rule followed in states where the common law is the basis of jurisprudence: "A statute is not presumed to work any change in the rules of the common law beyond what is expressed in its provisions or fairly implied in them, in order to give them full operation. For the written law to effect a repeal of those doctrines of the common law which are not unsuited to our condition, the intent of the legislature to bring about the change must be clear; and, if the intent be not fairly evident, the common law remains the rule of decision." (*Forrester* v. *Butte etc. Min. Co.*, 21 Mont. 544, 55 Pac. 229, 353.) Without referring to the *Forrester Case* this court reannounced the doctrine in *State ex rel. La Point* v. *District Court*, 69 Mont. 29, 220 Pac. 88, wherein it is said: "The rules of the common law are not to be overturned except by clear and unambiguous language. (*Ryalls* v. *Mechanics' Mills*, 150 Mass. 190, 5 L. R. A. 667, 22 N. E. 766)," and citing also 25 R. C. L. 1954, sec. 180; Endlich

on Interpretation of Statutes, 127; 2 Lewis' Sutherland on Statutory Construction, 2d ed., secs. 454, 455.

Where a right sought to be asserted was not known to the common law at the time it became a part of the jurisprudence of this state, "authority for the right, if it exists, must be found in the Acts of the legislature. (Bannack Statutes, p. 356; secs. 5672, 10703, Rev. Codes 1921; *Aetna Accident & Liability Co.* v. *Miller*, 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760; *Jonosky* v. *Northern Pac. Ry. Co.*, 57 Mont. 63, 187 Pac. 1014; *State ex rel. Metcalf* v. *District Court*, 52 Mont. 46, Ann. Cas. 1918A, 985, L. R. A. 1916F, 132, 155 Pac. 278.)" (*Simonsen·*v. *Barth*, 64 Mont. 95, 208 Pac. 938.)

In determining the intendment of a statute we bear in mind that in this jurisdiction the rule that statutes in derogation of the common law are to be strictly construed has no application; the Codes establish the law of this state respecting the subject to which they relate, and their provisions are to be liberally construed with a view to effect their objects and promote justice. (Sec. 4, Rev. Codes 1921.) An affirmative direction of this section is that a statute is to be liberally construed with a view to effect its object. This liberality of construction is designed to give effect to the legislative intent. (*In re Dolmage's Estate*, 203 Iowa, 231, 212 N. W. 553.) We bear in mind also that the common law is the rule of decision in all courts of this state, so far as it is not repugnant to or inconsistent with our Constitution and statutes. (Sec. 5672, Rev. Codes 1921.) It has been so from the beginning. (Bannack Laws, p. 356.) Sections 4 and 5672 are not inharmonious, as is illustrated by the present case.

In construing a statute the court must ascertain and carry into effect the intention of the legislature, if possible; such intention is to be gathered from the terms of the statute, considered in the light of the surrounding circumstances. (*State ex rel. Evans* v. *Stewart*, 53 Mont. 18, 161 Pac. 309; *State* v. *Bowker*, 63 Mont. 1, 205 Pac. 961; *Putnam* v. *Putnam*, 86 Mont. 135, 282 Pac. 855.)

Clearly, the object of the Married Women's Act of Montana was to relieve the wife of common-law disabilities; among others, to place the wife on an equality with her husband with respect to property matters, the right to contract, and to sue and be sued. We see nothing in any of the foregoing statutes to indicate a purpose to create a right which neither husband nor wife had at common law.

These sections do not attempt to confer greater rights of action upon a married woman than are possessed by her husband. (*Peters* v. *Peters,* 156 Cal. 32, 25 L. R. A. (n. s.) 699, 103 Pac. 219; *Rogers* v. *Rogers,* 265 Mo. 200, 177 S. W. 382; *Heyman* v. *Heyman,* 19 Ga. App. 634, 92 S. E. 25.) "By legislation common-law disabilities of the wife have been largely lifted, but lifting a disability does not operate to grant a right of action theretofore nonexistent between husband and wife. * * * Surely the legislature, in conferring upon the wife the right to sue did not confer a right of action never possessed by husband or wife at common law." (*Harvey* v. *Harvey,* 239 Mich. 142, 214 N. W. 305, 306.)

"So it is generally recognized that the Married Women's Acts which enlarge the rights of married women even to such an extent as to permit a wife to sue her husband, do not entitle her to sue him for an injury to her person or character after their marriage, for the reason that whether a husband is liable to his wife therefor is not a mere question of procedure, but of substantial right. And this is held true under a statute authorizing the wife to bring and maintain an action in her own name for any injury to her person or character, the same as if she were sole; such a statute merely changes the procedure but gives no new right, and applies only to such causes of actions as could be maintained by the husband and wife as co-plaintiffs before the statute took effect." (13 R. C. L. 1395.)

The following language from *Austin* v. *Austin,* supra, is pertinent here: "At common law there was no right of action either by husband or wife against the other for a personal tort. There was absolutely equality in that respect. There-

fore there was no occasion to emancipate the wife with reference to such torts, because the husband was under the same sort of disability as the wife. If appellant's contention were sound, we would have the novel situation of the wife having a cause of action against her husband for a personal tort, while the husband would have no such right against the wife; for there is nothing either in our Constitution or statutes which gives any such right to the husband." (And see *Dishon's Admr.* v. *Dishon's Admr.,* 187 Ky. 497, 13 A. L. R. 625, 219 S. W. 794; *Maine* v. *James Maine & Sons Co.,* 198 Iowa, 1278, 37 A. L. R. 161, 201 N. W. 20.)

With the foregoing a strong majority of the courts are in accord. We shall not extend this opinion by a citation of the cases. Opinions supporting the majority and minority views on the question may be found in the notes in 6 A. L. R. 1038, 29 A. L. R. 1482, 33 A. L. R. 1406, 44 A. L. R. 794, 48 A. L. R. 293, in the opinion in *Harvey* v. *Harvey,* supra, and in the late case of *Fitzmaurice* v. *Fitzmaurice,* (N. D.) 242 N. W. 526, the last case holding to the minority view pursuant to a statute of which the court says: "We have been unable to discover any other statute identical with our own."

Counsel for plaintiff call our attention to section 3 of Article III of the Constitution, which reads: "All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing, and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways." We fail to see how this declaration affects the matter in any way.

They refer also to section 6 of the same Article: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial or delay." Nor can we see the applicability of this section to the question at bar. (See *Woltman* v. *Woltman,* 153 Minn. 217, 189 N. W. 1022.)

The Constitution was written and adopted in the light of ▮ the conditions and well-known laws relating to domestic relations as they then existed in Montana, and must be construed accordingly. The salutary declarations of section 6 simply recognize fundamentals of government dear to the American heart; they assert nothing new in the way of constitutional declarations, and clearly were not intended to affect statutory laws then existing. (*State* v. *Kennie,* 24 Mont. 45, 60 Pac. 589; *Finch* v. *Kent,* 24 Mont. 268, 61 Pac. 653; *Davidson* v. *Davidson,* 52 Mont. 441, 158 Pac. 680.)

Courts and text-writers have discussed the policy of permitting husband and wife to sue each other for tort with strongly opposing views. Some view the change with complacency, others with alarm; some think such a policy liberal and consistent with the aim of the Married Women's Acts, others think it illogical and fundamentally destructive of the marriage relation. None will deny that the change is a radical departure from the basic law; and all must admit that "whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not to the judicial branch of the government." (*Thompson* v. *Thompson,* supra.)

We cannot escape the conclusion that in enacting the law ▮ respecting the rights, duties and liabilities of married women the legislature did not intend to interfere with the centuries-old policy which prohibits the spouses from suing each other for a personal tort: Such a radical and far-reaching change should be wrought only by language so plain as to show unmistakable evidence of legislative intention. (*Crowley* v. *Polleys Lumber Co.,* ante, p. 27, 9 Pac. (2d) 1068, 1069.) Had it been the intention of the legislature to change that policy "it would have been easy to have expressed that intent in terms of irresistible clearness. We can but regard this case as another of many attempts which have failed, to obtain

by construction radical and far-reaching changes in the policy of the common law not declared in the terms of the legislation under consideration." (*Thompson* v. *Thompson, supra.*)

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS, HONORABLE JEREMIAH J. LYNCH and HONORABLE JOHN HURLY, District Judges, sitting, respectively, in place of JUSTICES GALEN and FORD, disqualified, concur.

Rehearing denied November 21, 1932.