MARLEN A. HAKER ET AL., PLAINTIFF AND APPELLANT, *v.*
SOUTHWESTERN RAILWAY COMPANY ET AL., DEFENDANTS
AND RESPONDENTS.

No. 13952.
Submitted Jan. 31, 1978.
Decided April 20, 1978.
578 P.2d 724.

Gene Huntley argued, Baker, Keith D. Haker, Miles City, for plaintiff and appellant.

Dzivi, Conklin, Johnson & Nybo, William P. Conklin argued, Smith, Emmons, Baillie & Walsh, James R. Walsh argued, Great Falls, for defendants and respondents.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Plaintiff appeals from an order of the District Court, Tenth Judicial District, Judith Basin County, in his wrongful death and survivorship action denying his motion for partial summary judgment and granting several of the defendants' motions to dismiss for lack of personal jurisdiction.

Defendant Darrell A. Sawyer, a resident of the State of Arizona, is the principal stockholder and general manager of defendant Sawyer Aviation Company, an Arizona corporation. He also does business individually as Sawyer Aviation Company and as Sawyer School of Aviation.

Defendants Charles R. Newman and Dudley T. Newman are brothers and are both residents of the State of Arizona. They are officers and stockholders in defendant Southwestern Railway Company, an Arizona corporation. Additionally, the two brothers are engaged in a partnership and do business as Southwestern Railway Company.

Plaintiff Marlen A. Haker is the administrator of the estate of Lennie Dale Haker. Defendant Cecilia K. Bailey is the administratrix of the estate of Arthur Lee Myllymaki.

In August 1973, Charles Newman, doing business as Southwestern Railway Company, entered into a contract with Darrell Sawyer, doing business as Sawyer School of Aviation, for the purchase of a Cessna aircraft, Model 402, No. N69307. As part of their agreement, Sawyer was to provide Charles and his brother Dudley fifty hours of flight instruction. Art Myllymaki, an instructor-pilot employed by Sawyer Aviation, was assigned to give flight instructions to Dudley Newman.

During the weekend of September 29, 1973, Dudley and Myllymaki made a cross-country training flight to Tacoma, Washington, where Dudley was going to spend the weekend with relatives. Dudley and Charles had an understanding with Myllymaki that while Dudley was in Tacoma, Myllymaki could use the aircraft to fly to Stanford, Montana, to visit his relatives.

While in Stanford, Myllymaki took several of his friends including plaintiff's deceased, Lennie Dale Haker, on a "joyride" in the aircraft around the Stanford area. Myllymaki made two low sweeps over a bar in Utica, Montana. and then headed into the hills to the west where the plane crashed. There were no survivors.

On January 20, 1975, plaintiff filed a wrongful death and survivorship action against Southwestern Railway, Charles and Dudley Newman, Sawyer Aviation, Darrell Sawyer (collectively called the Arizona defendants), and the administratrix of Myllymaki's estate. He sought $750,000 in damages for the deceased's estate plus $50,000 for himself and the deceased's other heirs. Pursuant to rule 4(d), M.R.App.Civ.P., personal service of process was made in the State of Arizona upon Southwestern Railway, the Newmans, Sawyer Aviation, and Sawyer.

On June 18, 1975, defendants Sawyer and Sawyer Aviation filed a "Notice of Special Appearance" challenging the Montana court's jurisdiction over their persons and moved to quash the service of process and to dismiss the action as to them on the grounds of lack of personal jurisdiction. On July 3, 1975, defendants Southwestern Railway and Charles and Dudley Newman also moved to dismiss the action on the same grounds.

A hearing on the motions to dismiss was held and discovery followed. Plaintiff then moved for partial summary judgment on these issued: (1) That Charles and Dudley Newman and Darrel Sawye were liable for the negligence, if any, of Myllymaki in the airplane crash which killed plaintiff's decedent; and (2) that the Montana court had jurisdiction "to try the issues".

On June 7, 1977, the District Court entered an order which granted the motions of the Arizona defendants to dismiss the complaint as to them and which denied plaintiff's motion for partial summary judgment. From a judgment entered accordingly in favor of those defendants, plaintiff appealed.

Plaintiff raises the following issues on appeal:

1. Did the District Court err in refusing to grant plaintiff's motion for partial summary judgment?

2. Did the Montana District Court lack personal jurisdiction over the Arizona defendants?

As to the first issue plaintiff offers three theories under which he argues the Arizona defendants may be held liable. His primary reliance is upon Section 1-102(11) of the State Aeronautical Regulatory Act (codified at sections 1-101 to 1-503, R.C.M.1947). Alternatively, he contends that the Arizona defendants are also liable under the common law theories of respondent superior and negligent entrustment.

Plaintiff argues that Section 1-102(11) imputes the negligence, if any, of an airplane pilot to the owners or lessors of the plane. In support of his position, he cites cases from other jurisdictions which have so construed a similar statute. *Hoebee v. Howe* (1953), 98 N.H. 168, 97 A.2d 223; *Hays v. Morgan* (5th Cir. 1955), 221 F.2d 481 (interpreting a Misissippi statute); *Lamasters v. Snodgrass* (1957), 248 Iowa 1377, 85 N.W.2d 622; *Ross v. Apple* (1968), 143 Ind.App. 357, 240 N.E.2d 825 (interpreting an Ohio statute); *Heidemann v. Rohl* (1972), 86 S.D. 250, 194 N.W.2d 164 (interpreting a Nebraska statute); and *Allegheny Airlines, Inc. v. United States* (7th Cir. 1974), 504 F.2d 104 (interpreting an Indiana statute). We hold, however, that neither the plain meaning of Section 1-102(11), nor the legislature's intent in enacting it, is to impute a pilot's negligence to the owner or lessor; consequently, we refuse to so construe it.

Plaintiff's interpretation of Section 1-102(11), would effect a change in the common law relationship between bailors and bailees. At common law the negligence of an airplane pilot alone, absent any independent negligence of the owner or any special relationship between owner and pilot, was not imputable to the owner. *Nachsin v. De La Bretonne* (1971), 17 Cal.App.3d 637, 95 Cal.Rptr. 227, 228. Under Section 1-102(11), plaintiff would have us hold the owner or lessor of an airplane absolutely liable for the negligence, if any, of the pilot of the plane.

In Montana, the common law, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the

Constitution or statutes of Montana, is the rule of decision. Section 12-103, R.C.M.1947. It does not control, however, where the law is declared by statute. But where the law is not in conflict with the statutes, it is the rule of decision. Section 12-104, R.C.M.1947.

We have previously developed rules for determining the extent of change that a statute makes upon the common law. *Conley v. Conley* (1932), 92 Mont. 425, 15 P.2d 922. In *Conley* (1932), 92 Mont. 425, 15 P.2d 922. In *Conley* we stated that a statute is not presumed to work any change in the rules of the common law beyond what is expressed in its provisions or fairly implied in them in order to give them full operation. "* * * For the written law to effect a repeal of [the common law], * * * the intent of the legislature to bring about the change must be clear; and, if the intent be not fairly evident, the common law remains the rule of decision." *Conley*, 92 Mont. 436, 15 P.2d 925.

In this regard, the intent of the legislature governs the interpretation of the statute. *Matter of Estate of Baier* (1977), 173 Mont. 396, 567 P.2d 943. Its intent must, if possible, be determined from the plain meaning of the words used. If the interpretation of the statute can be so determined, the courts may not go further and apply other means of interpretation. *Softich v. Baker* (1976), 171 Mont. 135, 556 P.2d 902.

Section 1-102 is part of the State Aeronautical Regulatory Act and contains the definitions of certain words used in the Act. Subsection (11) of Section 1-102 defines the terms "operation of aircraft" and "operate aircraft". At the time of the accident involved here, it provided:

" 'Operation of aircraft' or 'operate aircraft' means the use of aircraft for the purpose of air navigation, and includes the navigation or piloting of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise), of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of the statutes of this state." Section 1-102(11), R.C.M.1947 (amended 1974).

Plaintiff argues that because any person who causes or authorizes the operation of aircraft is deemed to be engaged in the operation of aircraft, the Arizona defendants must be deemed to have been operating the aircraft at the time of the fatal crash, and any negligence on the part of Myllymaki, the pilot, must be imputed to them. We do not so construe the legislature's intent.

The State Aeronautical Regulatory Act was passed by the 1945 Montana legislature, 1945 Mont.Laws, Ch. 152, §2 1-25, and was patterned after the federal Civil Aeronautics Act of 1938, Ch. 601, Title I, 52 Stat. 977 (repealed 1958). The title to the Act indiates that among other things, the Act was to provide for the development and regulation of aeronautics in Montana and to create a State Aeronautics Commission which was to license, regulate and control aircraft and airmen. 1945 Mont.Laws, Ch. 152. One of the expressed policies of the Act was to further the public interest and aeronautical progress by providing for the protection and promotion of safety in aeronautics through cooperation in effecting a uniformity of the laws relating to the development and regulation of aeronautics in the several states. 1945 Mont.Laws, Ch. 152, § 3. Nowhere in the title or policy declaration of the Act is there any indication that the legislature intended to change the common law liability of bailors and bailees with respect to the use of airplanes.

Nor does the plain meaning of the words used in section 1-102(11) evince such an intent. Even if one accepts the argument that the phrase "Any person who causes or authorizes the operation of aircraft * * * [is] deemed to be engaged in the operation of aircraft * * *" imputes liability to the person who causes or authorizes the use of the plane, that phrase is limited in two respects: (1) Section 1-102(1), R.C.M. 1947 (amended 1974), states that these are definitions only for purposes of this act; and (2) section 1-102(11), R.C.M. 1947 (amended (1974), provides that such a person is deemed engaged in the operation of aircraft within the meaning of the statutes of this state. Both of these limitations refer to the statutes. We find no Montana statute, as opposed to a common law theory, from which liability may be imputed to the Arizona defendants.

■ Plaintiff claims that section 1-603, R.C.M.1947, forms a statutory basis for Myllymaki's liability, and that by bootstrapping this statute with section 1-102(11), liability can be imputed to the Arizona defendants. We reject this argument for two reasons. First, section 1-603, which provides that no person shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others, does not create a civil cause of action against a person who violates this section. Rather, it establishes duties the violation of which result in imposition of criminal penalties. Section 1-604, R.C.M.1947. Second, the phrase "No person shall operate an aircraft" is expressly qualified by the phrase "as pilot thereof". We hold this expres qualification negates the application of the definition in section 1-102(11).

As previously noted, Montana's State Aeronautical Regulatory Act was patterned after a federal act, the Civil Aeronautics Act of 1938, Federal courts which have interpreted the identical definition in the Civil Aeronautics Act and in its successor, the federal Aviation Act of 1958, Title I, 72 Stat. 731 (codified at 49 U.S.C. §§ 1301-1542), have nearly unanimously held that this definitional section was not intended to change common law liabilities by imputing a pilot's negligence to the owner or lessor of the plane. *Sanz v. Renton Aviation, Inc.* (9th Cir. 1975), 511 F.2d 1027; *Rogers v. Ray Gardner Flying Service, Inc.* (5th Cir. 1970), 435 F.2d 1389; *Rosdail v. Western Aviation, Inc.* (D.Colo.1969), 297 F.Supp. 681; *contra, Sosa v. Young Flying Service* (S.D.Tex.1967), 277 F.Supp. 554. Other state courts have also held that this definition does not impute a pilot's negligence to the owner or lessor. *Ferrari v. Byerly Aviation, Inc.* (1971), 131 Ill.App.2d 747, 268 N.E.2d 558.

If the Montana legislature had decided as a matter of policy to impute a pilot's negligence to the owner or lessor of the plane, it had the ability to clearly state so. Other state legislatures which have made such a policy decision have expressed that decsion clearly and unambiguously in their statutes. E.g., N.J.S.A. 6:2-7 (1973). Indeed, in 1929, when Montana adopted the Uniform Aeronautics Act, which was drafted by the National Commis-

sioners on Uniform State Laws in 1922, it chose not to adopt section 5 of the uniform act which expressly imposed absolute liability on owners of aircraft for injuries the aircraft caused to persons or property. 1929 Mont.Laws, Ch. 17, §§ 1-11; cf., 11 U.L.A. 159-67 (1938) (Uniform Aeronautics Act).

Montana's State Aeronautical Regulatory Act is, as its name implies, a *regulatory* act. *State ex rel. State Aeronautics Commission v. Board of Examiners* (1948), 121 Mont. 402, 409, 194 P.2d 633. The intent of the Montana legislature in adopting the definition of "operation of aircraft" in section 1-102(11) in our view, was to subject owners equally with pilots to the rules, regulations, and penalties provided in the Act. We, therefore, refuse to construe that subsection as imputing a pilot's negligence to the owner or lessor of the aircraft.

■ Plaintiff alternatively claims he should have been granted summary judgment as to the Arizona defendants' liability upon the common law theories of respondent superior and negligent entrustment. Under the doctrine of respondent superior an employer is liable for the acts of his employee only if the employee is acting within the scope of his employment. *Hoffman v. Roehl* (1921), 61 Mont. 290, 298, 203 P. 349. Plaintiff argues that where the ownership of the plane is established and it is shown that the pilot was in the employ of the owner, a rebuttable presumption arises that the employee was acting within the scope of his employment while piloting the plane, citing *Eliason v. Geil* (1942), 114 Mont. 97, 132 P.2d 158, 159 and *Monaghan v. Standard Motor Co.* (1934), 96 Mont. 165, 29 P.2d 378, 379. Further, denial by an *interested* witness controverting the presumption is insufficient to overcome the presumption as a matter of law and even denial by a *disinterested* witness is insufficient to overcome it as a matter of law if the testimony is controverted and impeached, not free from inherent improbabilities, or not so clear and convincing that but one conclusion could be drawn from it. *Eliason v. Geil*, 132 P.2d 159; *Monaghan v. Standard Motor Co.*, 29 P.2d 379-80.

■ The testimony in the record reveals that Myllymaki was

employed by Sawyer and Sawyer Aviation as an instructor-pilot, that his flight to Tacoma, Washington, with Dudley Newman, was for the purpose of giving Dudley flight instruction, that the plane used was owned by Charles Newman, that Charles and Dudley had an understanding with Myllymaki that Myllymaki could use the plane to fly to Stanford, Montana, while Dudley stayed in Tacoma, that Myllymaki was to use the plane only to fly to and from Stanford, and that the plane ws to remain in a hanger during Myllymaki's stay in Stanford. Additionally, the record shows that Sawyer and Sawyer Aviation had an express policy prohibiting their instructor-pilots from using a client's plane for personal use.

Given the fact that this testimony comes from "interested witnesses" and would not, therefore, be sufficient to overcome as a matter of law the rebuttable presumption that Myllymaki was acting within the scope of his employment, we find that at most this presents a question for the jury as to whether Myllymaki was so acting. Consequently, the District Court did not err in denying plaintiff summary judgment on this basis.

Plaintiff also relies upon the theory that the Arizona defendants negligently entrusted the use of Charles Newman's plane to Myllymaki. We find no evidence in the record to support such a theory. Cf. *Anderson Aviation Sales Company, Inc. v. Perez* (1973), 19 Ariz.App. 422, 508 P.2d 87.

Finally the plaintiff challenges the District Court's dismissal of his complaint as to the Arizona defendants for lack of personal jurisdiction. For the Montana court to exercise personal jurisdiction over the Arizona defendants, we must resolve two questions: (1) Do the Arizona defendants come within the provisions of Montana's long-arm jurisdiction over the Arizona defendants comport with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

In pertinent part, Rule 4 B(1), M.R.Civ.P., provides:

"* * * any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personal-

ly, through an employee, or through an agent, of any of the following acts:

"* * *

"(b) the commission of any act which results in accrual within this state of a tort action;

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;"

■ Plaintiff primarily relies upon 4 B(1)(b) to confer jurisdiction, but we refuse to hold that any of the Arizona defendants personally committed any act which resulted in accrual of a tort action within this state. Defendant Sawyer asigned Myllymaki, an instructor-pilot in Sawyer's employ, to give flight instruction to Dudley Newman. Dudley and Myllymaki arranged their flight scheduling around Myllymaki's other students; Sawyer took no part in this scheduling process. Additionally, Sawyer allowed Dudley and Myllymaki to fly anywhere during Myllymaki's instruction except when the proposed flight was beyond the capabilities of the plane. Dudley's flight to Tacoma was logged in Sawyer's flight-logging books, but the record is not clear whether Myllymaki logged his proposed trip from Tacoma to Montana. At any rate, Sawyer had no personal knowledge of this trip.

We hold that none of the Arizona defendants' actions can be said to "result" in the accrual of a tort action within this state. The fatal accident occurred during a joyride by Myllymaki. This joyride was not merely a deviation from his route to and from Montana; it was a completely separate and unauthorized trip.

We note that plaintiff's claim for relief against the Arizona defendants is based upon Myllymaki's negligent *operation* of the airplane and the "special relationship" he had with them. This is not a situation involving negligent manufacture of a plane which results in damage. *Scanlan v. Norma Projektil Fabrik* (D.Mont.1972), 345 F.Supp. 292; *Continental Oil Company v. Atwood & Morrill Company* (D.Mont.1967), 265 F.Supp. 692; and *Bullard v. Rhodes Pharmacal Co.* (D.Mont.1967), 263 F.Supp. 79. Nor is it a situation in which the rendering of a personal service

results in damage. *McGee v. Riekhof* (D.Mont.1978), 442 F.Supp. 1276. Plaintiff has not alleged any facts which demonstrate that any of the Arizona defendants purposefully availed themselves of the privilege of conducting activities within this state. *Hanson v. Denckla* (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1238.

■ Nor can personal jurisdiction be based upon Rule 4 B(1)(c). This claim for relief arises from the commission of a tort in this state; it is not a claim regarding the ownership, use or possession of property situated within this state.

Exercise of personal jurisdiction under Rule 4 B(1), is not restricted to the instances when one personally does any of the enumerated acts. It may also be predicated upon doing one of these acts through an employee or through an agent. In such a situation, though, the employee or agent must be acting within the scope of his employment or agency. This is not the case here. The record undisputedly shows that at the time of the air crash, Myllymaki was acting outside of the scope of his employment.

As we conclude that none of the Arizona defendants fall within the provisions of Montana's long-arm jurisdiction statute, we need not discuss the fundamental fairness of exercising that jurisdiction. We therefore hold that the District Court properly dismissed plaintiff's complaint as to the Arizona defendants.

Judgment affirmed.

MR. JUSTICES DALY, HARRISON and SHEA concur.